## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| REGINALD MOSES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV1056CAS/MLM |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody and an Amended Habeas Petition filed by Petitioner Reginald Moses. Docs. 1, 21.  Respondent has filed Responses to the Orders to Show Cause. Docs. 10, 22.  Petitioner filed a Reply. Doc. 19.  This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1).  Doc. 6.

## I.
## BACKGROUND

Petitioner was charged, in the Circuit Court of St. Louis County, as follows: one Count of robbery in the first degree, one Count of forcible sodomy, one Count of forcible rape, and three counts of armed criminal action in regard to the robbery, forcible sodomy, and rape. Resp. Ex. 3 at 8-10.  Petitioner was tried before a jury. Resp. Exs. 1-2, Trial Transcript (Tr.) at 2-411.

The testimony at Petitioner's trial was as follows: In early January 2007, F.B. and Petitioner met while she was waiting for the bus outside her son's daycare. Tr. 138.  Petitioner pulled up near the location of F.B. in his truck. Tr. 138, 271-72.  They began to talk, and, eventually, Petitioner offered to give F.B. a ride, which she accepted. Tr. 139-140, 272.  Between the initial encounter and

the date of the offenses, there were several encounters between F.B. and Petitioner during which Petitioner drove while one or the other went on errands. Tr. 140-42.  On the morning of January 22, 2007, Petitioner picked F.B. up in the morning. Tr. 142, 304.   F.B. testified that Petitioner picked her up to take her to the bank to open an account. Tr. 142.   Petitioner claimed that he had other reasons for stopping by, but he agreed to take F.B. to the bank. Tr. 304.  They went to the Bank of America where it took F.B. around ninety minutes to open the account. Tr. 143. After leaving the bank, Petitioner stated that he needed to use the restroom. Tr. 143-44, 311.  F.B. told Petitioner that she needed to use the restroom too, so Petitioner pulled over into a Hardee's. Tr. 144, 311. While F.B. went inside and used the restroom, Petitioner stayed out in the truck. Tr. 144, 312-13.  During that time, Petitioner looked through some of F.B.'s papers. Tr. 312-13.

After leaving Hardee's, Petitioner drove into a park and pulled over. Tr. 144.  Petitioner became aggressive, pulling out a gun and threatening F.B. regarding money. Tr. 145.  The gun was actually a starter's gun made to look like a real gun and had been altered to allow it to shoot real loads. Tr. 257-60, 266.  While emptying out her purse, F.B. dialed 911 and the rest of the incident was heard by police dispatchers over her cell phone. Tr. 145-46.  Throughout the incident, Petitioner repeatedly yelled at F.B. and made references to not making him mad or make him have to do something.  Petitioner told F.B. to pull down her pants and he pulled his own pants down. Tr. 147. After Petitioner pulled his pants down, he told F.B. that she knew what to do and pointed for her to perform oral sex on him. Tr. 147.  F.B. then performed oral sex on Petitioner. Tr. 147, 150.  F.B. testified that Petitioner was attempting to have sexual intercourse with her when the police finally arrived. Tr. 148-49.  When the police arrived, F.B. quickly exited Petitioner's vehicle without any pants. Tr. 149-60, 205-206. At that time, F.B. was "screaming hysterically" that Petitioner had just raped her. Tr. 205-206.

After the police showed up, Petitioner was taken into custody at around 11:45 a.m. Tr. 201, 203. While Petitioner was in custody, he sent a letter to F.B. Tr. 356-57, Ex. 24. The envelope contained statements like: "I just want to go home and repent to God" and "Let's just let him handle it from here." Ex. 24.  In the letter itself, Petitioner talked about hoping that F.B. could forgive him and that he hoped that she was "over the bad experience." Ex. 24.

F.B. was cross-examined at trial by Petitioner's trial counsel about her statements to the police and was asked particularly about how the sexual intercourse occurred. Tr. 164-66.  F.B. was also asked about what she had said during a deposition. Tr. 157, 166-67, 196-97.  In response, the State called Officer Jean Burks, one of the two officers that took the statement from F.B.  Officer Burks testified about what F.B. had said about how the sexual penetration occurred and that it occurred after the oral sex. Tr. 236-37.  Officer Burks was also asked a question about the oral sex. Tr. 238.

Petitioner was convicted of forcible sodomy and armed criminal action in connection with that forcible sodomy.  Petitioner was found not guilty of the other charges against him. Resp. Ex. 3 at 33-38.  He was sentenced to concurrent terms of twenty years in the Missouri Department of Corrections for the felony of forcible sodomy and ten years for the armed criminal action conviction. Resp. Ex. Resp. Ex. 3 at 44-46.

Petitioner filed a direct appeal. Resp. Ex. 4.  On June 16, 2009, the Missouri appellate court affirmed Petitioner's conviction and sentence and, on July 9, 2009, the court issued the mandate. Resp. Exs. 6-7.   On July 31, 2009, Petitioner filed a pro se post-conviction relief motion.  Resp. Ex. 8 at 8.  On December 1, 2009, appointed counsel filed an amended motion.  Resp. Ex. 8 at 9-11.  On April 23, 2010, the motion court denied Petitioner's post-conviction relief motion, without an evidentiary hearing. Resp. Ex. 8 at 31-34.  Petitioner then filed an appeal of the motion court's

decision with the Missouri appellate court. Resp. Ex. 9.   By decision, dated February 22, 2011, the

Missouri appellate court affirmed the decision of the motion court. Resp. Ex. 11.

On June 9, 2011, Petitioner filed his § 2254 habeas petition and seeks habeas relief on the

basis of the following:[1]

**Ground 1**: Petitioner's rights under the confrontation clause and the due process clause of the United States Constitution were violated because Officer Jean Burks testified about statements made by the victim;

**Ground 2**: Petitioner received ineffective assistance of counsel because his trial counsel failed to object to Officer Jean Burks's testimony about statements made by the victim;

**Ground 3:** Petitioner received ineffective assistance of counsel because trial counsel failed to impeach the victim with prior inconsistent statements;

**Ground 4:** Petitioner received ineffective assistance of counsel because counsel failed to impeach Officer Jean Burks with prior inconsistent statements;

**Ground 5:** Petitioner received ineffective assistance of counsel because counsel failed to call Officer Pillows in order to point out differences between the report of Officer Pillows and the report of Officer Burks;

---

[1]     For Ground 2 in his Petition, Petitioner merely states "wait for 29.15 appeal results."  For Ground 3 in his Petition, Petitioner states "for appeal results. Atty ... with held evidence of mines."  For the explanation requested on the Petition as to Ground 3, Petitioner states that his attorney allowed him "to only just the police report. ... He waived many of my rights without my consent.  I never got the chance to confront my accusers. ...  Neither witness of mines was call to trial."  For Ground 4, Petitioner merely states that he was denied effective assistance of counsel.  In support of Ground 4, Petitioner states that Officer Jean Burks's testimony contradicted her "own police reports."  Petitioner's Memorandum which he filed with his Petition is *sixty-nine pages* long and lists *nine grounds* for habeas relief.

In the interest of justice, the court has liberally interpreted Petitioner's habeas petition to include the above stated grounds for relief.  In order to do so it has extrapolated the Grounds which Petitioner seeks to raise before this court from both his § 2254 Petition and his supporting Memorandum.  To the extent the court may not have successfully determined the issues which Petitioner seeks to raise before this court, as discussed below, the only matters properly before this court are issues which Petitioner raised in either his direct appeal or the appeal of his post-conviction relief motion.  He raised only one issue in each of those appeals, and those issues are stated in Grounds 1 and 2 above. See Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997).

**Ground 6:** Petitioner received ineffective assistance of counsel because counsel failed to locate and call a man who was allegedly parked near the crime scene;

**Ground 7:** Petitioner received ineffective assistance of counsel because counsel failed to call a ballistic expert;

**Ground 8:** Petitioner received ineffective assistance of counsel because counsel failed to call Officer Pillow to impeach the victim;

**Ground 9:** Petitioner received ineffective assistance of counsel because counsel failed to object to the jury instructions on forcible sodomy and armed criminal action in regard to forcible sodomy;

**Ground 10:** Petitioner received ineffective assistance of counsel because counsel failed to call "Dr. Robert W. Curran" as a witness;[2]

**Ground 11:** Petitioner received ineffective assistance of counsel because trial counsel failed to call B. Fuessel, R.N., as a witness.[3]

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).  In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's

---

[2]      Ground 10, as stated above, is what Petitioner called "Ground Five" upon his requesting leave to amend his § 2254 Petition. Doc. 15.  To the extent Petitioner also intends to allege in Ground 10 that counsel was ineffective for failing to object to Officer Burks's testimony, that issue is addressed in Petitioner's Ground 2.

[3]      Ground 11 was filed pursuant to Petitioner's October 21, 2011, Motion to Amend Petition.

decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

6

> correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The

7

Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness."  Boyd v. Minnesota, 274 F.3d  497, 500 (8th Cir. 2001).  The state court's factual determinations  "must be rebutted by clear and convincing evidence."  King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).  For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires

considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).   A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted).   "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12.  A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750  (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or

9

demonstrate that default will result in a fundamental miscarriage-of-justice; <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994).  The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." <u>Dretke</u>, 541 U.S. at 393 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>Schlup v. Delo</u>, 513 U.S. 298 (1995)).  "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" <u>McCoy v. Lockhart</u>, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted).  Actual innocence is required to meet the miscarriage-of-justice exception. <u>See</u> <u>Sweet</u>, 125 F.3d at 1152 (citing <u>Schlup</u>, 513 U.S. at 316).  The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. <u>See</u> <u>Dretke</u>, 541 U.S. at 393.  In <u>Dretke</u>, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error.  Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." <u>Id.</u> at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." <u>Sweet</u>, 125 F.3d at 1152 n.9 (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).  To meet the requisite standard  for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." <u>Schlup</u>, 513 U.S. at 327. (emphasis added).  Evidence is

"new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)).   However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).  "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id.  The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7.  The "'actual prejudice' required to overcome the procedural bar  must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel."  Id.  (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly

presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

The only issues which Petitioner raised before the Missouri appellate court were Grounds 1 and 2.  As such, the court finds that he has procedurally defaulted Grounds 3-11.  Further, Petitioner has failed to suggest reasons to excuse his procedural default.  The court finds, therefore, that the relief sought by Petitioner in Grounds 3-11 should be denied on the basis that these Grounds were procedurally defaulted.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  The court finds that Petitioner's original § 2254 Petition was timely filed.  His Amended Petition, however, was untimely filed.[4]

## IV.
## DISCUSSION

**Ground 1- Officer Burks's testifying as to what the victim told her about the attack violated Petitioner's rights under the Confrontation Clause and the Due Process Clause of the United States Constitution**:

Upon addressing the issue of Ground 1, the Missouri appellate court held as follows:[5]

_____

[4]    The court notes that 22 days elapsed between the time the Missouri Appellate Court issued the mandate in regard to Petitioner's direct appeal and the date he filed his pro se post-conviction relief motion.  Additionally, the Missouri appellate court affirmed the decision of the motion court on February 22, 2011, and Petitioner did not file his Amended Habeas Petition until February 14, 2012.

[5]    The Missouri appellate court considered the issues of Ground 1 for plain error as the issues were not preserved for appeal.  Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error.  The Eighth Circuit acknowledged in <u>Hornbuckle v. Groose</u> that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing

[D]efendant argues the trial court plainly erred in allowing testimony of Officer Burks concerning statements the victim made to her.  Defendant argues this violated the confrontation clause, and he claims the testimony was inadmissible hearsay and it improperly bolstered the victim's testimony.

...

We first address defendant's claim that the admission of Officer Burks' testimony regarding the victim's statements violated the confrontation clause.  This argument is wholly without merit.  Here, the victim did testify at trial and was subject to cross-examination.  The requirements of the confrontation clause are fulfilled when the victim testifies at trial and is subject to cross-examination.  Lucio, 247 S.W.3d at 134 (citing Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

Next we consider defendant's claim that Officer Burks' testimony was inadmissible hearsay.  Hearsay is testimony concerning an out-of-court statement offered to prove the truth of the matter asserted therein.  Lucio, 247, S.W.3d at 134.  Such statements are generally inadmissible unless they fit within certain exceptions to hearsay.  Id.  Here, the state correctly points out that Officer Burks' testimony concerning the statements made to her by the victim was not offered for the truth of the statements themselves, but rather was offered for the content of the statements after defendant placed what the victim told the police at issue during his cross-examination of the victim. As a result, we do not believe the testimony of Officer Burks was, in fact, inadmissible hearsay.

Even assuming the testimony was hearsay, defendant cannot show prejudice resulting from the admission of the testimony.  "Hearsay evidence is objectionable in law because the person who makes the statement is not under oath and is not subject to cross-examination" State v. Chapman, 936 S.W.2d 135, 138 (Mo. App. 1996) ... .  In the present case the victim was present in court and provided detailed testimony

---

collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)).  In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error.  In Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error.   More recently, however, in Evans v. Luebbers, 371 F.3d  438, 443 (8th Cir. 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Ground 1 is procedurally barred.  See also James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

concerning her account of the incident.  Defendant's counsel cross-examined the victim at length concerning her recollection and had the opportunity to reveal any discrepancies between Officer Burks' testimony regarding the victim's statements and the victim's testimony herself.  This precluded the potential for any prejudice resulting from the admission of Officer Burks' testimony. <u>Chapman</u>, 936, S.W.2d at 139 ... .

Resp. Ex. 6 at 2-4.

Next, the Missouri appellate court considered that Petitioner argued that Officer Burks's testimony was improper bolstering; that "use of duplicative or corroborating extrajudicial statements is 'substantially restricted' when the witness testifies at trial"; that under certain circumstances the admission of such testimony may be harmless error because "'the statements added nothing of substance and the witness was available for cross-examination'"; that in Petitioner's case his counsel attempted to impeach the victim concerning her account of the incident on cross-examination; that "specifically" defense counsel asked the victim about what she had told Officer Burks "in an attempt to discredit her"; that, in response to this questioning, the State called Officer Burks to testify; that Officer Burks's testimony "established that the victim's statement to her after the incident was consistent with the victim's testimony at trial"; and that, therefore, Officer Burks's "testimony was properly admitted to rehabilitate the potential impeachment by [Petitioner] regarding the victim's description of what happened." Resp. Ex. 6 at 4-6.

Pursuant to <u>Williams</u>, 529 U.S. at 411-13, the court will consider federal law applicable to the issues raised in Petitioner's Ground 1.  First, the Supreme Court holds that the Confrontation of Clause of the Sixth Amendment is not violated where a defendant has the opportunity to cross examine the witness. <u>Crawford v. Washington</u>, 541 U.S. 36, 59 (2004) ("We reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause puts no constraints at all on the use of his prior testimonial statements.").

As noted by the Missouri appellate court, not only did the victim testify at Petitioner's trial, but defense counsel asked her about some of the statements which she made to the police.  As further considered by the Missouri appellate court, under such circumstances, Petitioner had a full opportunity to confront the victim about the accuracy of the statements she made to the police. Additionally, the Missouri appellate court specifically relied on the Supreme Court's decision in Crawford, 541 U.S. 36, when addressing Petitioner's Ground 1.  The court finds, therefore, that the finding of the Missouri appellate court regarding Petitioner's claim of a violation of the confrontation clause in Ground 1 is a reasonable application of and not contrary to federal law. See Crawford, 541 U.S. at 59; Hoover, 543 F.3d 448, 454.   Further, upon addressing this aspect of Ground 1, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

To the extent Petitioner argues before this court, as he did before the Missouri appellate court, that Officer Burks's testimony was hearsay, such an argument is not cognizable pursuant to federal habeas review as it involves the State court's interpretation and application of State law. See Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1995).  See also Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).  As such, the court finds that Petitioner is not entitled to habeas relief based on Ground 1 in its entirety.

**Ground 2 - Petitioner received ineffective assistance of counsel because his trial counsel failed to object to Officer Jean Burks's testimony about statements made by the victim:**

Pursuant to <u>Williams</u>, 529 U.S. at 411-13, the court will consider federal law applicable to Petitioner's Ground 2.  The court has set forth, above, in regard to Ground 1, federal law applicable to the admissibility of the testimony to which Petitioner contends his counsel should have objected and federal law regarding whether the admission of such evidence violated Petitioner's constitutional rights.  Additionally, federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).  The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a  petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Further, the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Additionally, "'[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." Anderson v. Bowersox, 262 F.3d 839, 841 (8th Cir. 2001) (quoting Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir.2001)). In regard to the

prejudice prong of the two-part test articulated in Strickland as applied to the failure to object to witness testimony, a habeas petitioner must show that there is a reasonable probability that had counsel objected the outcome of his trial would have been different. See Anderson, 262 F.3d at 842. Significantly, there can be no prejudice, as required by Strickland, where counsel failed to raise a non meritorious issue. Holloway v. United States, 960 F.2d 1348, 1356 (8th Cir. 1992). See also Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998) ("Assuming that counsel should have objected to the now-challenged testimony, we are satisfied that there is no reasonable probability that the result of the trial would have been different had counsel successfully objected to the testimony. Thus, Bounds has failed to establish that he was prejudiced by counsel's alleged deficient performance.").

First, upon considering the issue raised by Petitioner in Ground 2, the Missouri appellate court considered the requirements for establishing ineffective assistance of counsel as set forth by United States Supreme Court in Strickland, 466 U.S. at 687-92.   In particular, the Missouri appellate court considered that to establish constitutionally ineffective assistance of counsel a "movant must satisfy both the performance prong and the prejudice prong of this Strickland test." Resp. Ex. 11 at 3. Second, the Missouri appellate court considered that pursuant to the issue raised in Ground 2, Petitioner was asking the court to reconsider the issues raised in Ground 1 on direct appeal; that on direct appeal the court found "no error, plain or otherwise," when it reviewed the issues relating to Officer Burks's testimony; that on direct appeal the court found that Officer Burks's testimony did not violate the confrontation clause, that the testimony was not hearsay, that there was no prejudice from the testimony, and that Officer Burks's testimony did not improperly bolster the victim's testimony; that "trial counsel cannot be found ineffective for failing to raise a nonmeritorious objection"; and that, therefore, Petitioner was not entitled to post-conviction relief.  Resp. Ex. 11 at 4-6.

This court has found, above, that this finding of the Missouri appellate court regarding Petitioner's constitutional claim in Ground 1 was not contrary to federal law and was a reasonable application of federal law.  Further, as considered by the Missouri appellate court upon considering Petitioner's post-conviction relief motion appeal, had counsel objected, the objection would not have been sustained; thus, there was not a reasonable probability the outcome of Petitioner's trial would not have been different if counsel had objected to Officer Burks's testimony.   Under such circumstances, pursuant to federal law, Petitioner cannot meet either prong of the two-part test for establishing ineffective assistance of counsel. See Holloway, 960 F.2d at 1356. The court finds, therefore, that the finding of the Missouri appellate court, in regard to the issue of Ground 2, is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 688-89; Anderson, 262 F.3d at 841; Bounds, 151 F.3d at 1119; Holloway, 960 F.2d at 1356. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that the issue raised in Petitioner's Ground 2 is without merit and that Petitioner should be denied habeas relief on its basis.

## V.
## CONCLUSION

The court finds that aspect of Petitioner's Ground 1 which addresses the State court's determination of whether testimony was hearsay is not cognizable pursuant to federal habeas review. The court further finds that all other aspects of Petitioner's Ground 1 and Ground 2, in their entirety, are without merit.  The court further finds that Petitioner has procedurally defaulted Grounds 3-11 and that Ground 11 was untimely filed.  The court finds, therefore, that the relief Petitioner seeks in his Petitioner's § 2254 Petition should be denied and that the Petition should be dismissed.  The undersigned additionally finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional

right, Petitioner should  not be granted a certificate of appealability in this matter. See Tiedeman v

Benson, 122 F.3d 518, 522 (8th Cir. 1997).

     Accordingly,

     **IT IS HEREBY RECOMMENDED** that the relief sought by Petitioner in his § 2254

Petition be **DENIED** and that the Petition be **DISMISSED**, with prejudice. Doc. 1

     **IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by

Petitioner for a certificate of appealability be **DENIED**.

     The parties are advised that Petitioner has fourteen (14) days in which to file written

objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an

extension of time for good cause is obtained, and that failure to file timely objections may result in

a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


                  /s/Mary Ann L. Medler
                  MARY ANN L. MEDLER
                  UNITED STATES MAGISTRATE JUDGE


Dated this 16th day of August, 2012.