**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRYAN TULLOCK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11CV1609MLM** |
| | ) | |
| **DAVE DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Bryan Tullock ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. Petitioner filed a Reply to Respondent's Response. Doc. 9. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 4.

### I.
### BACKGROUND

Petitioner was charged, in Warren County, Missouri, by Amended Information, with first degree murder, first degree burglary, two counts of first degree assault of a law enforcement officer, the class A felony of assault in the first degree, the class B felony of assault in the first degree, and five counts of armed criminal action. Petitioner was charged as a prior offender. Resp. Ex. A at 18-23. On April 9, 2009, Petitioner appeared before the State Circuit Court and entered pleas of guilty to these charges. Resp. Ex. A at 6.

At Petitioner's plea hearing, the prosecutor testified that if Petitioner's case went to trial, the State would prove that:

> [I]n the evening hours of ... June 1st, 2006, [Petitioner] was at an establishment in the 4100 block of Mexico Road in St. Peters with a co-worker named Christopher

Sullivan. During that time he had a conversation with the mother of his children, Jennifer Gamache, and [] there was a dispute [which] arose at the time and they exchanged both messages and text messages.

...

... And [] - - around eleven o'clock [Petitioner] left abruptly. He then [] was ... residing at about the 7100 block of Mexico Road, proceeded to Mexico Road and Highway K in O'Fallon, purchased ammunition, nine millimeter and .22 caliber bullets, proceeded from there to Montgomery County where Jennifer Gamache was located.

He was then shortly after midnight on June 2nd, 2006, [] apprehend for a traffic stop by Patrolman Lybarger and Corporal Brooks. ... The traffic stop was for blowing off stop signs and exceeding the speed limit on Sturgeon, Highway 19, in Montgomery City. The officer, Lybarger, approached [Petitioner's] driver's side and he removed - - he lowered his window, placed a gun in the window and proceeded to discharge it. That weapon was believed to have been a nine millimeter Glock automatic with a seventeen round clip in it. He continued to fire on and strike Officer Lybarger. Officer Lybarger's partner, Corporal Brooks, returned fire. [Petitioner] fired at Corporal Brooks as well.

... [T]hen [Petitioner] left that location and proceeded up to a location a block or two away at around 6th and Salisbury where the trailer of Heide Cassagrande and her husband, David McManus was located. He forced entry into that ... residence and David McManus, who knew [Petitioner], saw him and asked him what he was doing. [Petitioner] replied he had just shot a cop.

At that time [] there was a sound coming from the bedroom where Heide was located. [P]etitioner proceeded down the hall passed Mr. McManus and shot Heide Cassagrande twice killing her. ... Mr. McManus heard another shot and heard his dog yelp. The dog had been shot. And then [Petitioner] pointed the gun at Mr. McManus. Mr. McManus ran out the door and [Petitioner] proceeded to fire at him and then fired at him from the door of the porch of the mobile home and was seen doing so by neighbors as well.

At that point [Petitioner] got back into his Cadillac and drove a short distance, apparently around the block to the location of where Jennifer Gamache resided, that being the mother of his children, and Jennifer Gamache and her oldest child, Tyler Gamache, and her friend, Ricky Fry, were standing outside having heard the noise the fireworks or gunshots. And [Petitioner] exited his vehicle, told Tyler to get inside the house. ... And then [Petitioner] pointed the weapon at Ricky Fry and proceeded to shoot him. Mr. Fry fell to the ground. [Petitioner] proceeded to fire repeatedly at a fast rate and then there was a pause and then proceeded to shoot him again in various parts of his body including his chest, torso and finally his head.

From that point [Petitioner] then left the scene, was ultimately located, and this all of course happened in Montgomery County and the City of Montgomery. He was apprehended the next morning in the Marshal Diggs wildlife area on the border between Audrain County and Montgomery County by Audrain County officers at which point he still had possession of the weapon which he was not wanting to surrendered at the time and in fact discharged another shot. [Petitioner] was subdued and was found in possession of the ammunition boxes that had been purchased at Wal-Mart the night before.

Resp. Ex. A at 38-41.

Upon being asked by the court whether there was no question of identification, the prosecutor responded that there was no question as Petitioner "was known to Ricky Fry [and] was known to David McManus. He had been known to Heide Cassagrande, ..., and Jennifer Gamache and Tyler Gamache also saw those shootings and Brandon Lybarger [and] Jared Brooks both [were] able to identify [Petitioner] as the shooter." Resp. Ex. A at 41.

Petitioner entered his plea of guilty to all Counts. Resp. Ex. A at 26-27. He testified that he understood that by pleading guilty he was admitting the essential elements of the charges against him. Resp. Ex. A at 31-32. The court found that there was a factual basis for Petitioner's pleas and sentenced him to concurrent sentences of life without parole on the murder charge, fifteen years for the class B felony of assault in the first degree and for the burglary charge, and life on all other counts. Upon accepting Petitioner's guilty pleas, the court noted that there was no plea agreement. The judge stated that he was a believer in the death sentence. Resp. Ex. A at 42.

Petitioner filed a pro se post-conviction relief motion under rule 24.035. Resp. Ex. A at 69-93. Counsel was appointed and notified the court that an amended motion need not be filed. Resp. Ex. A at 94-95. The motion court denied Petitioner's request for post-conviction relief and he filed an appeal with the Missouri appellate court. Resp. Ex. A at 96-100, Resp. Ex. B. By decision, dated February 21, 2011, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. D.

On September 15, 2011, Petitioner filed his § 2254 Petition in which he raises the following issues:

(1)     Petitioner suffered cumulative prejudice as a result of ineffective assistance of counsel;

(2)     Petitioner received ineffective assistance of counsel because counsel failed to properly investigate a diminished capacity defense;

(3)     Petitioner received ineffective assistance of counsel because counsel was unprepared and failed to investigate the State's witnesses; and

(4)     Petitioner received ineffective assistance of counsel because counsel failed to investigate whether he suffered from post-traumatic stress disorder or had organic brain damage.

Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in

state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has recently held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address

all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327. (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural

default] is analytically distinct from the <u>Strickland</u> prejudice." <u>Id.</u> at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the <u>Strickland</u> prejudice required to establish the underlying claim for ineffective assistance of counsel." <u>Id.</u> (citing <u>United States v. Frady</u>, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

In Petitioner's case, before the Missouri appellate court, he alleged ineffective assistance of counsel based the following: counsel's failure to investigate a diminished capacity defense, counsel's failure to investigate and depose sixty-six witnesses which the State endorsed, counsel's failure to investigate a defense of post traumatic stress disorder ("PTSD"), counsel's failure to investigate Petitioner's "other physical or biological symptoms," and counsel's cumulative error. Resp. Ex. B. Respondent argues that Missouri law requires that to present a valid post-conviction relief claim, a movant must allege facts to support his claim, rather than mere legal conclusions. The Missouri appellate court found that Petitioner failed to plead facts, rather than just legal conclusions, to support his post-conviction relief claims. Respondent argues, therefore, that the issues raised by Petitioner in his § 2254 Petition are procedurally barred because they were not properly raised pursuant to State law. Doc. 7 at 7-8. Respondent further argues that Petitioner's § 2254 Petition does not comply with federal pleading requirements. Doc. 7 at 8. While Respondent's arguments are well taken, in the interest of justice, the court will consider Petitioner's claims on their merits. The court further finds that Petitioner's § 2254 Petition is timely.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams, 529 U.S. 362, the Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at

412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that

10

the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C.

§ 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court

reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has

addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers,

371 F.3d 458 (8th Cir. 2004). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Moreover, "when a state appellate court affirms a lower court decision without reasoning," a federal court, pursuant to § 2254 review, "'look[s] through' the silent opinion and appl[ies] AEDPA review to the 'last reasoned decision' of the state courts." Worthington v. Roper, 631 F.3d 487, 497 (8th Cir. 2011) (quoting Winfield v. Roper, 460 F.3d 1026, 1038 (8th Cir. 2006) (other citations omitted). "This is so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." Id. (citing Winfield, 460 F.3d at 1038).

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been

different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## IV.
## INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are

only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

As stated above, the Supreme Court held in Strickland that to establish that counsel's performance was constitutionally ineffective, a petitioner must establish both that the attorney's performance was deficient and that this deficiency prejudiced the petitioner's defense. See Strickland, 466 U.S. at 687. The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "The two part Strickland test 'applies to challenges to guilty pleas based on ineffective assistance of counsel.'" Tinajero-Ortiz v. United States, 8th Cir. Apr. 8, 2011) (quoting Hill, 474 U.S. at 58). "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). See also Griffith v. Wyrick, 527 F.2d 109, 113 n.6 (8th Cir. 1975) ("If all that was present in this case was an inaccurate prediction of sentence by defendant's counsel ... an otherwise voluntary plea of guilty would not be vitiated.") (citing Masciola v. United States, 469 F.2d 1057, 1059 (3rd Cir. 1972) (per curiam); Swanson v. United States, 304 F.2d 865, 866 (8th Cir.1962) (per curiam)). A habeas petitioner must establish that he "would not have [pled] guilty and would have insisted on going to trial," absent his attorney's misrepresentations about the sentence he would receive if he pled guilty. Hill, 474 U.S. at 59.

## V.
## DISCUSSION

**Ground 1 - Petitioner suffered cumulative prejudice as a result of ineffective assistance of counsel:**

Before the Missouri appellate court Petitioner stated that he raised this issue before the motion court; that he did not want to waive this issue on appeal; but that he recognized that cumulative error is not a free-standing claim, and so [did] not analyze [this claim] separately." Resp. Ex. B at 11-12. Before the motion court Petitioner argued that counsel made cumulative errors, as otherwise noted in his motion, and that therefore, reversal of his guilty plea was required. Resp. A at 91-92.

Prior to considering Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court considered two-pronged test of Strickland as set forth above. Resp. Ex. D at 3. Further, the Missouri appellate court considered that when pleading guilty, a defendant waives any claim of ineffective assistance of counsel, except to the extent that counsel's conduct bears upon the voluntariness and understanding with which the defendant entered his plea. Additionally, the court held that "a guilty plea waives any future complaint a movant may have about counsel's failure to investigate and prepare for trial." Resp. Ex. D at 3 (citing, Yoakum v. State, 849 S.W.2d 685, 688 (Mo. Ct. App. 1993)). Additionally, the court held, in regard to all of Petitioner's claims of ineffective assistance of counsel that: "To avoid this rule, the movant attempts to portray his allegations of error as claims that his plea was involuntary, unknowing, and unintelligent. He maintains that he was forced to plead guilty because plea counsel failed to investigate and prepare for trial." Resp. Ex. D at 3.

Specifically, in regard to Petitioner's claim of cumulative error, as alleged in Ground 1, the Missouri appellate court held that Petitioner "failed to successfully plead any instance where counsel was ineffective" and that, therefore, the alleged instances cannot be combined to amount to cumulative error." Resp. Ex. D at 6.

The court has set forth above the federal standard applicable to claims of ineffective assistance of counsel in the guilty plea context. Also, under federal law, "'cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own.'" Girtman v. Lockhart, 942 F.2d 468, 475 (8th Cir. 1991) (quoting Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir.1990)). As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court

finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of counsel because counsel failed to properly investigate a diminished capacity defense:**

In support of Ground 2, Petitioner contends that counsel's investigation should have included records of his medical history which would have shown that he had a past diagnosis of depressive disorder and that he had made suicide attempts.[1]  He also argues that he did not remember committing the offense and that the testimony of Officer Lybarger would have supported a defense of diminished capacity.  Petitioner also refers to a psychiatric evaluation performed by Richard G. Scott, Ph.D.  Petitioner acknowledges that defense counsel hired Dr. Scott in conjunction with Petitioner's defense. Resp. Ex. A at 76-79.  Petitioner also argues that Missouri law permitted his counsel to notify the court of Petitioner's intent to rely upon the defense of his not being guilty by reason of mental disease or defect and that counsel's failure to do so "rises to the level of ineffective assistance of counsel." Doc. 9 at 8.

The court notes that early in Petitioner's case, his counsel sought and obtained an order compelling the disclosure of Petitioner's psychiatric records. Resp. Ex. A at 10.  The motion court reviewed the record of Petitioner's psychological evaluation and held, in regard to Ground 2, that although there was a record of substantial substance abuse and brain injuries "suffered many years before the offense," there was nothing in the record to support Petitioner's claim that counsel was ineffective for failing to develop a diminished capacity defense. Resp. Ex. A at 99.

---

[1]     The arguments noted above are those made in Petitioner's pro se State post-conviction relief motion.  Petitioner's appellate brief merely incorporated these arguments. Resp. Ex. B.

This court has found above that the Missouri appellate court's consideration of federal law in regard to the standard applicable to ineffective assistance of counsel in the guilty plea context is not contrary to federal law and is a reasonable interpretation of federal law. Particularly, in regard to Petitioner's Ground 2, the Missouri appellate court held as follows:

> The diminished-capacity defense consists of "proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. State v. Walkup, 220 S.W.3d 748, 754 (Mo. banc 2007) ... . Unlike the defense of not guilty by reason of mental disease or defect, the diminished -capacity defense contemplates full responsibility, but only for a lesser crime. State v. Lowe, 318 S.W.3d 812, 819 (Mo. App. W.D. 2010). The element of deliberation, defined as "cool reflection for any length of time, no matter how brief," is the mental state that distinguishes first- and second-degree murder. Walkup, 220 S.W.3d at 750.

> The movant argues that counsel should have fully investigated and developed a diminished-capacity defense based on the following: the death of the movant's mother two years before the shootings; a family history of unspecified psychiatric problems; a mild, childhood head injury; the movant's migraine headaches; his stress and depression fifteen years before the shootings; another head injury resulting in headaches and memory loss fifteen years before the shootings; and a seizures, confusion, and memory loss shortly after the shootings.

> The existence of a mental disease or defect alone will not suffice to diminish criminal responsibility. Lowe, 318 S.W.3d at 819. Evidence of a mental defect must be connected to the mental state that the evidence seeks to negate. See id. at 821. Here, the movant failed to plead facts, not conclusions, showing how any of these circumstances or conditions evidence a "lack of deliberate or premeditated design," which would be required for a diminished-capacity defense to first-degree murder. thus, the movant failed to plead facts warranting relief.

Resp. Ex. D at 4-5.

First, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional

violation cognizable in a federal habeas petition); <u>Jones v. Armontrout</u>, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in <u>Garner v. Louisiana</u>, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." In regard to Ground 2, Petitioner does not assert a constitutional violation, but merely requires the court to interpret and apply Missouri law in regard to "diminished capacity." A diminished capacity defense is created by State law and this court may not examine the State court's interpretation and application of such law. <u>See</u> <u>Schleeper v. Groose</u>, 36 F.3d 735, 737 (8th Cir. 1994). As such, the court finds that Petitioner's Ground 2 is not cognizable under § 2254.

Second, to the extent the Missouri appellate court's determination that Ground 2 was without merit is based on that court's factual conclusions, in proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." <u>Hall v. Luebbers</u>, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003)). <u>See also</u> <u>Simmons v. Luebbers</u>, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. <u>Rushen v. Spain</u>,464 U.S. 114, 120, (1983); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Sumner v. Mata</u>, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. <u>Ashker v. Class</u>, 152

F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)).

Third, as set forth above, to establish ineffective assistance of counsel in the guilty plea context, a habeas petitioner must establish that counsel's performance was unreasonable. The facts which Petitioner admitted were true included the prosecutor's statement that Petitioner left an address at 4100 Mexico Road and purchased ammunition prior to proceeding to Ms. Gamache's house. In light of this evidence, it cannot be said that counsel was unreasonable for failing to assert a diminished capacity defense. Additionally, Petitioner must establish prejudice. Petitioner has failed to establish prejudice in that he testified before the plea court that the facts as stated by the prosecutor were true and that he was guilty of all the elements of the charges to which he pled guilty. This court finds, alternatively, that the Missouri appellate court's consideration of the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. To the extent that the Missouri appellate court did not adjudicate any existing constitutional issues in regard to Petitioner's Ground 2, this court finds that there is no reasonable probability that the error complained of in Ground 2 affected the outcome of Petitioner's case. See Robinson, 278 F.3d at 865-66. In conclusion, the court finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3- Petitioner received ineffective assistance of counsel because counsel was unprepared and failed to investigate the State's witnesses:**

In support of Ground 3 Petitioner argued before the motion court that the State endorsed sixty-six witnesses a week before trial; that, had counsel interviewed these witnesses, he would have found "powerful defense value regarding [Petitioner's] mental state leading up to the incident"; and that counsel's lack of preparedness forced him to plead guilty.[2] Resp. Ex. A at 84. Petitioner also argues that counsel had a duty to make reasonable investigations and that counsel's failure to do so was ineffective assistance of counsel. Doc. 9 at 13. Petitioner further argues that there were facts and evidence to establish that he did not act with deliberation and premeditation. Doc. 9 at10.

Upon addressing Ground 3, the Missouri appellate court considered that Petitioner argued that his "counsel was ineffective for failing to investigate and depose the 66 witnesses that the State endorsed." Resp. Ex. D at 5. The court then held that "[o]nly in rare cases will a court finds counsel's failure to interview witnesses sufficient to support a claim of ineffective assistance of counsel." Resp. Ex. D at 5. The court further held that Petitioner "failed to specifically describe the information that counsel purportedly failed to discover. Likewise, he [] failed to prove that the information would have aided or improved his position at trial." Resp. Ex. D at 5.

The court has set forth above the federal standard applicable to claims of ineffective assistance of counsel as well as the Missouri appellate court's consideration of that standard. Additionally, as discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. Strickland, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d

---

[2]      See note 1, above.

694, 698 (8th Cir. 2001) (citations omitted).  Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id.  The decision whether to call witnesses, cross examine witnesses, or introduce evidence may be a matter of trial strategy. Hall v. Lubbers,  296 F.3d 685, 694 (8th Cir. 2002);  Battle v. Delo, 19 F.3d 1547,1556 (8th Cir. 1994).

Further, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland at 690-691.

The Supreme Court has further held in Wiggins v. Smith, 539 U.S. 510, 533 (2003), that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing."  Wiggins further provides that to hold otherwise "would interfere with the 'constitutionally protected independence of counsel' at the heart of Strickland, 466 U.S., at 689, 104 S.Ct. 2052." Id.

As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law.  Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.  The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

**Ground 4 - Petitioner received ineffective assistance of counsel because counsel failed to investigate whether he suffered from post-traumatic stress disorder or had organic brain damage:**

In support of Ground 4 Petitioner contends that had counsel investigated and had Petitioner tested for post-traumatic stress disorder and organic brain damage, the court would have found that Petitioner suffered from these conditions and that these conditions would have been a mitigating factor in regard to the death penalty. In particular, Petitioner contends that had counsel investigated, he would have discovered that, in 2003, Petitioner experienced the deaths of an aunt, two uncles, and a grandfather and Petitioner suffered injuries to his leg and finger due to an accidental shooting, and that, in 2004, his other grandfather died.[3] Resp. Ex. A at 85-86. Petitioner also argues that his mental history would have established "the elements of second degree murder, as opposed to the premeditation required for first degree murder." Doc. 9 at 4.

As stated above, the Missouri appellate court considered federal law applicable to claims of ineffective assistance of counsel prior to addressing Petitioner's Ground 4. The court has found that the Missouri appellate court's decision, in this regard, is not contrary to federal law and that it is a reasonable application of federal law. Specifically, in regard to Ground 4, the Missouri appellate court held that Petitioner did not allege that he had "PTSD, or that such a disorder was revealed in his pre-trial psychiatric evaluation." Resp. Ex. D at 5-6. The court found, therefore, that Petitioner "failed to plead facts, not conclusions, warranting relief" in regard to Ground 4. The Missouri appellate court also considered because Petitioner did, in fact, avoid the death penalty by pleading guilty, he [] failed to demonstrate how he suffered prejudice by not having a jury consider the death penalty." Resp. Ex. D at 6. Significantly, the Missouri appellate court found that Petitioner could not establish the prejudice necessary to prove ineffective assistance of counsel. As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 4 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri

---

[3]      See note 1, above.

appellate court reasonably applied federal law to the facts of Petitioner's case.  As such, the court finds that the issue raised by Petitioner in Ground 4 is without merit and that habeas relief on its basis should be denied.

## VI.
## CONCLUSION

The court finds that Petitioner's Ground 2 is not cognizable pursuant to § 2254.  The court further finds that Grounds 1, 3, and 4 and, alternatively, Ground 2 are without merit.  As such, the court finds that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should  not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that  the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**; Doc. 1

**IT IS FURTHER ORDERED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED**;

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>16th</u> day of August, 2012.